## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| ALI M. MAHMOUD, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | No. 2:14-cv-255-JHR |
| | ) | |
| COREY JACQUES, et al., | ) | |
| | ) | |
| *Defendants* | ) | |

## MEMORANDUM DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT[1]

The plaintiff alleges that on July 22, 2013, Lewiston police officers Corey Jacques, Brian Bourgoin, Zachary Provost, Brian Beauparlant, and Craig Johnson arrested him without probable cause, used excessive force against him or failed to prevent its use, and conspired to violate his constitutional rights. *See* Amended Complaint (ECF No. 9) ¶¶ 49-56.[2]  All five defendants move for summary judgment as to the plaintiff's false arrest and conspiracy claims, and defendants Provost, Beauparlant, and Johnson move for summary judgment as to his excessive force claims. *See* Defendants' Motion for Partial Summary Judgment ("Motion") (ECF No. 40) at 1.

For the reasons that follow, the Motion is granted as to all defendants with respect to the plaintiff's false arrest and conspiracy claims, granted as to Johnson with respect to the plaintiff's excessive force claims, granted in part as to Provost and Beauparlant with respect to the plaintiff's excessive force claims, and otherwise denied.

---

[1] The parties have agreed to have me preside over all proceedings in this action, including the entry of judgment. *See* ECF No. 15.

[2] The parties stipulated to the dismissal of all claims against the City of Lewiston and Michael Bussiere in his official and individual capacities. *See* ECF No. 38. This terminated Counts 3 and 4 of the plaintiff's four-count amended complaint, *see* Amended Complaint ¶¶ 57-64, as well as Count 1 insofar as it named the City of Lewiston and Bussiere, *see id*. ¶¶ 49-52. Remaining are Count 1, alleging conspiracy to violate the plaintiff's federal and state constitutional rights, as against all five remaining defendants, and Count 2, alleging false arrest and the use of excessive force in violation of the plaintiff's federal and state constitutional rights, as against all five remaining defendants. *See id*. ¶¶ 49-56.

## I.   Applicable Legal Standards

### A.   Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). "A dispute is genuine if 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party.'" *Johnson v. University of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Johnson,* 714 F.3d at 52. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (quoting *Clifford v. Barnhart,* 449 F.3d 276, 280 (1st Cir. 2006) (emphasis omitted)); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## B.  Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id.*  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id.*  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id.*  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id.*

Local Rule 56 directs that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(f).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id.*; *see also, e.g., Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010); Fed. R. Civ. P. 56(e)(2) ("If a party fails

to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II. Factual Background

The parties' statements of material facts, credited to the extent that they are either admitted or supported by record citations in accordance with Local Rule 56, with disputes resolved in favor of the plaintiff as the nonmovant, reveal the following.[3]

On July 22, 2013, Lewiston police officers Beauparlant, Bourgoin, Provost, Jacques, and Johnson responded to a report that a tow truck driver was being assaulted in the area of 22 Knox Street. Defendants' Statement of Material Facts Not in Dispute in Support of Motion for Partial Summary Judgment ("Defendants' SMF") (ECF No. 41) ¶ 1; Plaintiff's Response to Defendant[s'] Local Rule 56 Statement of Facts and Plaintiff's Additional Statement of Material Facts ("Plaintiff's Opposing SMF") (ECF No. 47) ¶ 1. The tow truck driver, Shayne Benning, was kicked in the side of his face as he was attempting to connect an illegally parked vehicle to his tow truck. *Id.* ¶ 2. Benning had a serious eye injury from the assault and was visibly bleeding from his face. *Id.* ¶ 3. He later found out that he had a fractured eye socket. *Id.*

Benning described his assailant to Beauparlant as a Somali man in his 20s wearing a gray shirt, gray shorts, and an orange hat, who had run behind some buildings nearby. *Id.* ¶ 4. Beauparlant spoke with a passenger in the tow truck, Christine Dillingham, who also described the assailant as a Somali man in his early 20s wearing a gray shirt, gray shorts, and an orange hat. *Id.*

---

[3] Statements that are qualified are assumed to be admitted subject to that qualification, unless a qualification indicates otherwise. To the extent that I have incorporated one side's qualification into the statement of the other, I have determined that the qualification is supported by the record citation(s) given. I have omitted qualifications that are unsupported by the citation(s) given or are redundant. To the extent that I have taken into consideration a denial of a statement, I have determined that the denial is supported by the citation(s) given.

¶ 5.  Beauparlant gave the description of the assailant to the dispatcher, and it was broadcast over the radio to other responding officers.  *Id*. ¶ 6.  The description of the assailant did not include any facial hair.  Plaintiff's Additional Statement of Material Facts ("Plaintiff's Additional SMF"), commencing on page 3 of Plaintiff's Opposing SMF, ¶ 2; Defendants' Reply Statement of Material Facts in Support of Motion for Summary Judgment ("Defendants' Reply SMF") (ECF No. 49) ¶ 2.

When Jacques arrived on the scene, an eyewitness came out of the large crowd that was gathering and identified the assailant as a man wearing gray colored shorts, a bluish-gray shirt, and an orange hat, who had run to the rear of a nearby Knox Street building after the assault.  Defendants' SMF ¶ 7; Plaintiff's Opposing SMF ¶ 7.  Jacques ran toward the rear of the Knox Street buildings and saw a tall black male matching the description of the assailant run.  *Id*. ¶ 8.  Jacques ordered the man to stop, but he ran onto the porch of a Knox Street building in the area of 18 Knox Street.  *Id*. ¶ 9.  Jacques radioed the location of the suspect, and Bourgoin ran to meet him at the Knox Street building.  *Id*. ¶ 10.

Jacques and Bourgoin followed the suspect into the apartment building at 10 Knox Street.  Plaintiff's Additional SMF ¶ 3; Defendants' Reply SMF ¶ 3.  A woman leaving the apartment building let Jacques and Bourgoin into 10 Knox Street and told the officers a male had gone to Apartment 101 on the first floor.  *Id*. ¶ 4.[4]  Jacques and Bourgoin went to Apartment 101 and knocked on the door.  *Id*. ¶ 5.  Jacques heard someone on the third floor "saying something along

---

[4] The defendants qualify this statement, denying that the woman told officers a male had gone to Apartment 101 on the basis that this is a mischaracterization of the cited portion of the trial transcript, in which Jacques testified that the woman said, "I'm not sure, looked like maybe apartment 101[.]"  Defendants' Reply SMF ¶ 4; Trial Proceedings, *State v. Mamoud* [sic] (Me. Super. Ct. Feb. 17-18, 2015) ("Trial Tr.") (ECF No. 39-2), attached to Joint Record (ECF No. 39), at 125.  However, as the defendants concede, *see* Defendants' Reply SMF ¶ 4, both Jacques and Bourgoin state in their affidavits that the woman told them that she saw the suspect knocking on the door to Apartment 101, *see* Affidavit of Brian Bourgoin ("Bourgoin Aff.") (ECF No. 39-6), attached to Joint Record, ¶ 6; Affidavit of Corey Jacques ("Jacques Aff.") (ECF No. 39-7), attached to Joint Record, ¶ 8.  Viewing the evidence in the light most favorable to the plaintiff as nonmovant, I have let his statement stand.

the lines, Who are you, I don't know you, kind of yelling." *Id*. ¶ 6. Jacques and Bourgoin started going up the stairs toward the third floor. *Id*. ¶ 7. At that time, the plaintiff was heading down the stairwell from the third floor to the second floor. *Id*. ¶ 8. The plaintiff moved to the side to let the officers pass by him. Plaintiff's Additional SMF ¶ 9; Deposition of Ali M. Mahmoud ("Mahmoud Dep.") (ECF No. 39-1), attached to Joint Record, at 14.[5] Jacques grabbed the plaintiff by the arm. Plaintiff's Additional SMF ¶ 10; Defendants' Reply SMF ¶ 10. The plaintiff was not wearing an orange hat. *Id*. ¶ 11. He had facial hair. *Id*. ¶ 12. He is a Sudanese man in his 20s who is about six feet, three inches tall and weighed approximately 235 pounds at the time of his arrest. Defendants' SMF ¶ 13; Plaintiff's Opposing SMF ¶ 13.

The plaintiff was slammed into the wall by Jacques and Bourgoin and handcuffed behind his back. Plaintiff's Additional SMF ¶ 13; Plaintiff's Answers to Defendants' Interrogatories Prop[o]unded Upon Plaintiff Ali M. Mahmoud ("Plaintiff's Interrog. Ans.") (ECF No. 47-1), attached to Plaintiff's Opposing SMF, ¶ 9.[6]

The plaintiff was detained inside the Knox Street apartment building by Bourgoin and Jacques, who were the only officers present and involved in his detention inside the building. Defendants' SMF ¶ 11; Plaintiff's Opposing SMF ¶ 11. At that point, Provost had walked to the rear of the apartment complex in an attempt to locate the suspect when he heard over the radio that the suspect had been taken into custody. *Id*. ¶ 12.

Jacques and Bourgoin took the plaintiff outside of the apartment building. Plaintiff's Additional SMF ¶ 14; Defendants' Reply SMF ¶ 14. They slammed the plaintiff into a police

---

[5] The defendants deny this, Defendants' Reply SMF ¶ 9; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.

[6] The defendants deny this in part, Defendants' Reply SMF ¶ 13; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.

cruiser. Plaintiff's Additional SMF ¶ 15; Plaintiff's Interrog. Ans. ¶ 9.[7] While the plaintiff was against the hood of the police cruiser, one of the officers twisted his arm up his back, causing him great pain. Plaintiff's Additional SMF ¶ 16; Plaintiff's Interrog. Ans. ¶ 9.[8] The plaintiff started screaming in pain. Plaintiff's Additional SMF ¶ 17; Plaintiff's Interrog. Ans. ¶ 9.[9] The plaintiff yelled for someone to record what was happening to him. Plaintiff's Additional SMF ¶ 18; Plaintiff's Interrog. Ans. ¶ 9.[10] The plaintiff yelled, "They're hurting me. Help." Plaintiff's Additional SMF ¶ 19; Plaintiff's Interrog. Ans. ¶ 9.[11]

Other Lewiston police officers came over to assist Jacques and Bourgoin after the plaintiff was outside of the apartment building. Plaintiff's Additional SMF ¶ 20; Plaintiff's Interrog. Ans. ¶ 9.[12] The officers picked the plaintiff up off the hood of the cruiser and threw him onto the street, causing his face to hit the street. Plaintiff's Additional SMF ¶ 21; Plaintiff's Interrog. Ans. ¶ 9.[13] The plaintiff's hands were handcuffed behind his back when he was thrown onto the ground. Plaintiff's Additional SMF ¶ 22; Plaintiff's Interrog. Ans. ¶ 9.[14] Once the plaintiff was on the ground, three or more officers got on his back and hit him in the back of his head, back, and arms. Plaintiff's Additional SMF ¶ 23; Plaintiff's Interrog. Ans. ¶ 9.[15] Jacques stated that "[o]ther

---

[7] The defendants deny this in part, Defendants' Reply SMF ¶ 15; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.

[8] The defendants deny this in part, Defendants' Reply SMF ¶ 16; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.

[9] The defendants deny this in part, Defendants' Reply SMF ¶ 17; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.

[10] The defendants deny this in part, Defendants' Reply SMF ¶ 18; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.

[11] The defendants deny this in part, Defendants' Reply SMF ¶ 19; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.

[12] The defendants deny this in part, Defendants' Reply SMF ¶ 20; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.

[13] The defendants deny this in part, Defendants' Reply SMF ¶ 21; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.

[14] The defendants deny this in part, Defendants' Reply SMF ¶ 22; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.

[15] The defendants deny this, Defendants' Reply SMF ¶ 23; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.

officers joined in" once the plaintiff was taken to the ground.  Plaintiff's Additional SMF ¶ 24; Defendants' Reply SMF ¶ 24.  The plaintiff was not resisting the officers at any time during this arrest.  Plaintiff's Additional SMF ¶ 25; Plaintiff's Interrog. Ans. ¶ 9.[16]

While the plaintiff was being hit on the ground by the officers, his mouth hit the street, his front teeth were fractured, and he began bleeding from his mouth.  Plaintiff's Additional SMF ¶¶ 29, 37; Plaintiff's Interrog. Ans. ¶¶ 9, 15, 17.[17]  One of the officers put his knee on the back of the plaintiff's neck, pushing so hard he could not breathe.  Plaintiff's Additional SMF ¶ 30; Mahmoud Dep. at 15.[18]  The plaintiff yelled out as loud as he could, but no one intervened.  Plaintiff's Additional SMF ¶ 31; Mahmoud Dep. at 15.[19]  The plaintiff was screaming for help the whole time that he was on the ground.  Plaintiff's Additional SMF ¶ 32; Plaintiff's Interrog. Ans. ¶ 9.[20]

The plaintiff's lip and tongue were cut, and he could not speak because his tongue was cut.  Plaintiff's Additional SMF ¶¶ 38-39; Defendants' Reply SMF ¶¶ 38-39.  He received medical treatment for his injuries at St. Mary's Hospital before being taken to jail.  *Id*. ¶ 40.  None of the officers involved in the arrest was injured or hurt by the plaintiff.  *Id*. ¶ 41.

At the time of the assault on July 22, 2013, a large crowd had gathered near the tow truck.  Defendants' SMF ¶ 14; Plaintiff's Opposing SMF ¶ 14.  Beauparlant was not directly involved with detaining or arresting the plaintiff, nor did he see how the plaintiff had gotten injured as he

---

[16] The defendants deny this, Defendants' Reply SMF ¶ 25; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.
[17] The defendants deny these statements in part, Defendants' Reply SMF ¶¶ 29, 37; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.
[18] The defendants deny this in part, Defendants' Reply SMF ¶ 30; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.
[19] The defendants deny this in part, Defendants' Reply SMF ¶ 31; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.
[20] The defendants deny this in part, Defendants' Reply SMF ¶ 32; however, I view the evidence in the light most favorable to the plaintiff, as nonmovant.

was too busy tending to Benning and attempting to control the crowd that had gathered. Defendants' SMF ¶ 15; Trial Tr. at 107; Affidavit of Brian M. Beauparlant ("Beauparlant Aff.") (ECF No. 39-4), attached to Joint Record, ¶¶ 6, 8-10.[21]   Beauparlant observed some of the interaction between the plaintiff and Jacques and Bourgoin by the police cruisers.  Plaintiff's Additional SMF ¶ 33; Defendants' Reply SMF ¶ 33.  He testified at his criminal trial that he observed "probably the latter half [of the interaction] when they were closer to the cruisers since most of my attention was focused on the victim and the crowd[,]" and that he saw officers walking the plaintiff to the cruiser and placing him inside of it.  *Id.*[22]  Beauparlant heard the plaintiff yelling and saw that he was bleeding from his mouth.  *Id.* ¶¶ 34-35.  He got a spit hood from one of the cruisers and brought it over to one of the officers.  *Id.* ¶ 36.

Provost was not inside the apartment building when the plaintiff was taken into custody. Defendants' SMF ¶ 16; Plaintiff's Opposing SMF ¶ 16.[23]  Provost was present when the plaintiff was taken out of the apartment building and taken down to the ground in front of the cruisers. Plaintiff's Additional SMF ¶ 27; Defendants' Reply SMF ¶ 27.  Provost was one of the officers who lifted the plaintiff off of the ground.  Plaintiff's Additional SMF ¶ 28; Defendants' Reply SMF ¶ 28.[24]

---

[21] The plaintiff denies this, asserting that Beauparlant was present and observed him being taken to the ground by Jacques and Bourgoin, heard him yelling once on the ground, saw him bleeding from his mouth, and obtained a spit hood for one of the officers.  Plaintiff's Opposing SMF ¶ 15.  However, the citations that he provides do not support his assertions that Beauparlant observed him being taken to the ground or heard him yelling *once on the ground*. *See* Trial Tr. at 81-83, 101, 103.

[22] My recitation incorporates the defendants' qualification, more accurately reflecting the cited portion of the Trial Transcript.

[23] I omit Defendants' SMF ¶¶ 17-19, which the plaintiff effectively denies, asserting that he was not uncooperative and did not resist arrest, Plaintiff's Opposing SMF ¶¶ 17-19, viewing the record in the light most favorable to the plaintiff, as nonmovant.

[24] I omit the remainder of paragraph 28, which is not supported by the citation given.

Johnson observed Jacques take the plaintiff to the ground, but it happened quickly, and Johnson was not close enough to intervene had he seen any inappropriate use of force. Defendants' SMF ¶ 20; Affidavit of Craig Johnson ("Johnson Aff.") (ECF No. 39-3), attached to Joint Record, ¶ 5.[25]

The plaintiff testified at his deposition that, once outside the apartment building, he assumed that a third officer, in addition to the two officers who arrested him inside the building (Bourgoin and Jacques) picked him up and put him on the ground. Defendants' SMF ¶ 21; Plaintiff's Opposing SMF ¶ 21. He also testified that the only other officer he saw during his arrest was a big, tall, bald man who allegedly placed a knee on his neck. *Id.* ¶ 22.[26]

Benning identified the suspect the officers had detained in the Knox Street apartment building, later identified as the plaintiff, as the man who assaulted him. *Id.* ¶ 23. Dillingham also identified the suspect the officers had detained, later identified as the plaintiff, as the man who assaulted Benning. *Id.* ¶ 24.

Beauparlant and Jacques testified at the plaintiff's criminal trial. *Id.* ¶ 25. At the criminal trial, the plaintiff's attorney argued that the witness identifications of Mahmoud on the night of his arrest were unreliable, questioning Benning, Dillingham, Beauparlant, and Jacques regarding the description and identifications of the plaintiff on the day of the assault. *Id.* ¶ 26. At the conclusion of the jury trial, the plaintiff was found guilty of assaulting the tow truck driver, Benning. *Id.* ¶ 27.

---

[25] The plaintiff denies this, asserting that Johnson was present when he was taken to the ground and subsequently hit by several officers while handcuffed on the ground. Plaintiff's Opposing SMF ¶ 20. However, his denial does not controvert the facts set forth in paragraph 20. The plaintiff further asserts that Johnson saw both Jacques and Bourgoin take him to the ground, Plaintiff's Additional SMF ¶ 26; however, his assertion as to Bourgoin is not supported by the citation given.

[26] The plaintiff qualifies this statement, asserting that he saw "at least three" officers on top of him once he was thrown to the ground. Plaintiff's Opposing SMF ¶ 22; Plaintiff's Interrog. Ans. ¶ 9.

## III.  Discussion

### A.  Unlawful Arrest Claims: All Defendants

Jacques, Bourgoin, Provost, Beauparlant, and Johnson all seek summary judgment as to the plaintiff's claims of unlawful arrest in violation of his federal and state constitutional rights (subsumed in Count 2) on four alternative grounds: that, (i) pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the plaintiff's conviction in state court for assaulting Benning bars him from bringing a claim pursuant to 42 U.S.C. § 1983 for arrest without probable cause, (ii) pursuant to *Napier v. Town of Windham*, 187 F.3d 177, 184 (1st Cir. 1999), the plaintiff is collaterally estopped from raising such a claim, (iii) the defendants had the right to detain and arrest the plaintiff, and (iv) the defendants are entitled to qualified immunity even if they were mistaken in believing that they did.  *See* Motion at 4-11.[27]

I conclude that Provost, Johnson, and Beauparlant are entitled to summary judgment as to these claims on the basis that, as the plaintiff essentially concedes, there is no evidence that they had anything to do with the decision to detain or arrest him.  I further determine that all of the defendants are entitled to summary judgment as to these claims on the grounds that they are barred by *Heck* and that the plaintiff is collaterally estopped from pressing them.  I need not and do not reach the defendants' additional alternate bases for summary judgment as to these claims.

### 1.  Concession as to Provost, Johnson, and Beauparlant

The plaintiff all but concedes the merit of the defendants' argument that no false arrest claim lies as to Provost, Johnson, and Beauparlant, stating that he leaves it to the court to determine

---

[27] As the defendants observe, *see* Motion at 2 n.1, analysis of the plaintiff's federal conspiracy, false arrest, and excessive force claims is dispositive of his parallel claims pursuant to Maine law, *see, e.g., Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007) (disposition of a claim pursuant to 42 U.S.C. § 1983 controls a claim pursuant to the Maine Civil Rights Act); *Widi v. McNeil*, No. 2:12-cv-00188-JAW, 2013 WL 5348628, at *6 n.2 (D. Me. Sept. 24, 2013) (applying same standard to determine if defendant entitled to summary judgment on conspiracy claims pursuant to federal and Maine law).

whether there is material issue of fact as to those defendants on those claims.  *See* Plaintiff's Response to Defendants' Motion for Summary Judgment ("Response") (ECF No. 46) at 1 n.1.  As the defendants suggest, *see* Defendants' Reply in Support of Motion for Partial Summary Judgment ("Reply") (ECF No. 48) at 1-2, a failure to respond to a movant's bid for summary judgment on certain claims is, in itself, a basis on which to grant summary judgment as to those issues, *see, e.g.*, *Paquin v. MBNA Mktg. Sys., Inc.*, 233 F. Supp.2d 58, 69 (D. Me. 2002) (granting summary judgment as to one count "because Plaintiff failed to brief the issue in response to Defendants' motion for summary judgment"); *see also, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

In any event, on the merits, there is no evidence that Provost, Johnson, or Beauparlant effectuated or participated in any way in the plaintiff's arrest.  They are, therefore, entitled to summary judgment as to the plaintiff's false arrest claims.

## 2. *Heck* Bar

In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck*, 512 U.S. at 486-87 (footnotes omitted) (emphasis in original).

> The Supreme Court explained:
>
> An example of this latter category – a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful – would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, . . . the § 1983 action will not lie.

*Id*. at 486 n.6 (emphasis in original).

The plaintiff does not seek to recover damages for an "allegedly unconstitutional conviction or imprisonment," *id*. at 486, but rather for having been subjected to an unlawful arrest. Thus, his false arrest claims are barred, if at all, if they fall within the second category of claims described in *Heck*: those in which "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[.]" *Id*. at 487. The plaintiff was convicted of assault, a crime of which a person is guilty if he or she "intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person." 17-A M.R.S.A. § 207(1)(A).

In a broad sense, the plaintiff's claims for damages for false arrest necessarily imply that his criminal conviction was wrongful: if the plaintiff was wrongly arrested, he never should have been tried on the charges for which he was arrested and never would have been convicted of assault. Nonetheless, as the plaintiff observes, *see* Response at 6, the First Circuit has not considered whether or in what circumstances the *Heck* doctrine bars a section 1983 plaintiff from seeking damages for false arrest stemming from an incident in which that plaintiff was arrested, charged, and ultimately convicted of a crime. Therefore, I apply First Circuit guidance on whether other claims survive the *Heck* bar in determining whether this one does.

As the defendants point out, *see* Reply at 2, the First Circuit has recognized that, even though a section 1983 excessive force claim is not necessarily barred by *Heck*, "it is not necessarily free from *Heck*" when the claim and the underlying conviction are "so interrelated factually as to bar the § 1983 claim[,]" *Thore v. Howe*, 466 F.3d 173, 180 (1st Cir. 2006).  In *Thore*, the First Circuit could not determine on the record before it whether the plaintiff's excessive force claim was so factually interrelated with his conviction for assault and battery with a dangerous weapon as to be barred by *Heck*.  *See id.*  Hence, it did not reach that question, instead affirming the district court's application of the doctrine of judicial estoppel to bar the excessive force claim.  *See id.* at 180-87.

By contrast, in this case, as the defendants contend, *see* Reply at 2, it is clear that the plaintiff's assault conviction and false arrest claims are sufficiently factually interrelated as to bar him from pressing those claims.  The plaintiff intends to argue in support of his false arrest claims, as he did in his criminal case, that his identification as Benning's assailant on the night of his arrest was unreliable because, *inter alia*, he was not wearing an orange hat, he had facial hair, and he is Sudanese, not Somali.  *Compare* Response at 8-10 *with* Defendants' SMF ¶ 26; Plaintiff's Opposing SMF ¶ 26.  In these circumstances, to permit the plaintiff's section 1983 claims for damages for false arrest to go forward would necessarily imply the invalidity of his conviction for assaulting Benning.[28]

---

[28] The plaintiff correctly observes that in *Turkowitz v. Town of Provincetown*, 914 F. Supp.2d 62 (D. Mass. 2012), the United States District Court for the District of Massachusetts held that *Heck* barred a false arrest claim when "the evidence deemed sufficient to convict beyond a reasonable doubt [on a charge of resisting arrest] [was] the same information that the defendant officers had at the time of arrest."  Response at 7 (quoting *Turkowitz*, 914 F. Supp.2d at 70).  He argues that, in this case, by contrast, the information that Jacques and Bourgoin had upon arresting him in the apartment stairwell was not the sum total of the evidence used to convict him of the crime of assault, which included Benning's and Dillingham's testimony identifying him as the assailant.  *See id.* at 8-10.  He contends that, because the evidence in this trial would be limited to what Jacques and Bourgoin knew at the time of the arrest, allowing the false arrest claims to go forward would not call into question the validity of the conviction, which was based on a fuller evidentiary palette.  *See id.* at 10.  While, in *Turkowitz*, the evidence known to the officers happened

The plaintiff does not contend that his conviction has been reversed or expunged.  *See* Response at 4-10.[29]  *Heck*, accordingly, bars him from claiming that he was unlawfully arrested in the wake of the incident at issue.

### 3.  Issue Preclusion

As the defendants point out, *see* Motion at 5, "[i]t is beyond doubt that issue preclusion applies to a federal civil rights action following a criminal conviction in state court[,]" *Napier*, 187 F.3d at 184 (citation and internal quotation marks omitted).  A federal court "must give preclusive effect to judgments in state court whenever the courts of the particular state would do so," *id.*, and hence, Maine's collateral estoppel rules apply.

"In Maine, a prior criminal conviction conclusively establishes all facts essential to the final judgment of conviction."  *Id.* (citation and internal quotation marks omitted).  "The convicted party is precluded from litigating the issues essential to that conviction in subsequent civil actions." *Id.*

A judgment generally is "final" for purposes of issue preclusion despite the pendency of an appeal.  *See, e.g., In re Kane*, 254 F.3d 325, 328 (1st Cir. 2001) ("[B]oth the federal courts and the Maine courts tend to follow the general approach of the *Restatement (Second) of Judgments* (1982)"; general rule in most jurisdictions is that issues "actually litigated and determined by a valid and final judgment, if essential to the judgment, bind[] the same parties in any subsequent

---

to be the same as that used to convict the plaintiff, I do not read *Turkowitz* to hold that this is essential.  All that is required, as the First Circuit has clarified, is that the section 1983 claim and the prior conviction be "so interrelated factually as to bar the § 1983 claim."  *Thore*, 466 F.3d at 180.  That is the case here.  While, at the time of arrest, Jacques and Bourgoin did not have the benefit of a direct identification of the plaintiff by the victim and the eyewitness, Benning and Dillingham, they relied on descriptions supplied by those individuals.  The factual bases for the arrest and the conviction form a seamless web, and the overlap is substantial.

[29] The defendants disclose that the plaintiff has appealed his conviction to the Law Court.  *See* Motion at 3, 5.  My research indicates that, while the Law Court heard oral argument on that appeal on March 1, 2016, to date no decision has issued. The mere fact that an appeal is pending does not prevent the application of the *Heck* doctrine.  To the contrary, a conviction must be invalidated before a section 1983 claim otherwise barred by *Heck* can proceed.  *See*, e.g., *Cassell v. Ober*, No. 94-1796, 1994 WL 861128, at *1 (1st Cir. Oct. 5, 1994).

action, whether on the same or a different claim[,] . . . even where the first, or issue preclusive, judgment is still on appeal when the second action occurs.") (citations and internal quotation marks omitted); *Bartlett v. Pullen*, 586 A.2d 1263, 1265 (Me. 1991) ("The general rule is that a judgment is final for purposes of *res judicata* despite the pendency of an appeal.") (citing Restatement (Second) of Judgments § 13 cmt. f (1982)).

The plaintiff's conviction for assaulting Benning conclusively establishes that he was Benning's assailant.  It is undisputed that, during the criminal trial, the plaintiff's attorney argued that the witness identifications of the plaintiff on the night of his arrest were unreliable, questioning Benning, Dillingham, Beauparlant, and Jacques regarding the description and identifications of the plaintiff on the day of the assault.  Defendants' SMF ¶ 26; Plaintiff's Opposing SMF ¶ 26.  He cannot now claim that, based on unreliable witness identifications, he was arrested without probable cause to believe that he assaulted Benning.  *See, e.g*., *Kyricopoulos v. Town of Orleans*, 967 F.2d 14, 15-17 (1st Cir. 1992) (appellant estopped from asserting claim that police lacked probable cause for his arrest when he was convicted of the crime for which he was arrested and raised the same questions during his criminal trial on which he based his claim of lack of probable cause for his arrest).[30]

---

[30] The plaintiff argues against the application of collateral estoppel on the basis that the issue of whether he was guilty of assaulting Benning is not identical to that of whether officers had probable cause to arrest him.  *See* Response at 11 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979), for the proposition that collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation").  However, as discussed above, pursuant to Maine law, "a prior criminal conviction conclusively establishes all *facts* essential to the final judgment of conviction."  *Napier*, 187 F.3d at 184 (citation and internal quotation marks omitted) (emphasis added).  The plaintiff, hence, cannot challenge the fact that he was Benning's assailant, which he would effectively do in arguing that officers lacked probable cause to arrest him.

**B.  Excessive Force Claims: Defendants Provost, Beauparlant, and Johnson**

Defendants Provost, Beauparlant, and Johnson next seek summary judgment on the plaintiff's excessive force claims against them (subsumed in Count 2), arguing that there is no triable issue that they either used such force or failed to prevent its use (so-called "bystander liability"). *See* Motion at 11-14.

A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." *Plumhoff v. Rickard,* __ U.S. __, 134 S. Ct. 2012, 2020 (2014).  To determine whether an officer used excessive force in a given case, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tolan v. Cotton,* __ U.S. __, 134 S. Ct. 1861, 1865 (2014) (citation and internal quotation marks omitted).

"This reasonableness inquiry is an objective one; it is not a question of subjective intent." *McGrath v. Tavares,* 757 F.3d 20, 25 (1st Cir. 2014).  "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (citation and internal quotation marks omitted).  The inquiry is conducted "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citations and internal quotation marks omitted). It "must account for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 25–26 (citation and internal quotation marks omitted). "[N]ot every push or shove will reach the level required for an actionable excessive force claim[.]"

*Mlodzinski v. Lewis,* 648 F.3d 24, 38 (1st Cir. 2011) (citation and internal quotation marks omitted).

Courts applying the excessive force reasonableness test consider, among other factors, "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Raiche v. Pietroski,* 623 F.3d 30, 36 (1st Cir. 2010) (citation and internal quotation marks omitted). However, the critical judgment must be made in light of the "totality of the circumstances," not through mechanical application of a multi-factor test. *Plumhoff,* 134 S. Ct. at 2020. "[I]n the end we must still slosh our way through the factbound morass of 'reasonableness.'" *Scott v. Harris,* 550 U.S. 372, 383 (2007).

The First Circuit has long held that "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance." *Gaudreault v. Municipality of Salem,* 923 F.2d 203, 207 n.3 (1st Cir. 1990). At the same time, an officer's "mere presence at the scene, without more, does not by some mysterious alchemy render him legally responsible under section 1983 for the actions of a fellow officer." *Calvi v. Knox Cty.,* 470 F.3d 422, 428 (1st Cir. 2006). The line between presence that compels action and mere presence is difficult to define; however, the First Circuit has required that in order to proceed with a failure to intervene claim, a plaintiff must show that the "bystander-officer . . . has a realistic opportunity to prevent the use of excessive force by a fellow officer[.]" *Id.* at 428 n.3.

As the defendants point out, *see* Motion at 12, there is no evidence that either Provost, Beauparlant, or Johnson was present when the plaintiff was detained and arrested in the apartment building. Thus, there is no basis to find that any of those officers used excessive force against the

plaintiff or failed to avail himself of a realistic opportunity to prevent its use in the apartment building.

The defendants likewise are correct that there is no triable issue that Provost, Beauparlant, or Johnson personally used excessive force against the plaintiff once he was brought outside of the apartment building.  *See* Motion at 12-14; Reply at 7.  The plaintiff relies on his assertions that (i) he saw a third officer help Jacques and Bourgoin take him to the ground, (ii) he recalls at least three officers hitting him while on the ground, and (iii) Jacques stated that other officers came over to assist once the plaintiff was taken to the ground.  *See* Response at 16.  Nonetheless, as the defendants argue, *see* Reply at 7, such vague evidence that one or more other unidentified officers used force is not enough to establish a triable issue of fact that Provost, Beauparlant, or Johnson did so.  The plaintiff does adduce evidence that Provost was one of the officers who lifted him off of the ground.  *See* Plaintiff's Additional SMF ¶ 28; Defendants' Reply SMF ¶ 28.  However, this in itself does not establish a use of excessive force against the plaintiff.

This leaves the question whether there is a triable issue that any of the three officers failed to avail himself of a realistic opportunity to prevent the use of force once the plaintiff was taken to the cruisers.  I conclude that there is such a triable issue as to Provost and Beauparlant, but not as to Johnson.

First, on the plaintiff's version of events, he was subjected to several successive uses of excessive force: he states that, although he did not resist arrest, he was slammed against a cruiser, had his arm twisted up behind his back, causing great pain, and was then thrown forcefully to the ground while handcuffed, whereupon he was beaten and kneed by officers, breaking his front teeth. *See* Plaintiff's Additional SMF ¶¶ 15-16, 21-23, 25, 29-30; Plaintiff's Interrog. Ans. ¶ 9; Mahmoud Dep. at 15.  He asserts that, throughout this sequence of events, he was screaming in pain,

protesting that the officers were hurting him, yelling for help, and/or simply yelling or screaming. *See* Plaintiff's Additional SMF ¶¶ 17-19, 31-32; Plaintiff's Interrog. Ans. ¶ 9; Mahmoud Dep. at 15. Provost was present when the plaintiff was taken out of the apartment building and taken down to the ground in front of the cruisers, and he assisted in lifting him off of the ground. *See* Plaintiff's Additional SMF ¶¶ 27-28; Defendants' Reply SMF ¶¶ 27-28. A reasonable trier of fact, crediting the plaintiff's version of events, could conclude that Provost was in sufficient proximity to these uses of force to have observed them and to have had a realistic opportunity to prevent at least some of them.

Likewise, while Beauparlant did not see how the plaintiff was injured because he was busy tending to Benning and controlling the crowd that had gathered, *see* Defendants' SMF ¶ 15; Trial Tr. at 107; Beauparlant Aff. ¶¶ 6, 8-10, he observed some of the interaction between the plaintiff and Jacques and Bourgoin by the police cruisers, heard the plaintiff yelling, saw that he was bleeding from his mouth, and obtained a spit hood for one of the officers, *see* Plaintiffs' Additional SMF ¶¶ 33-36; Defendants' Reply SMF ¶¶ 33-36. A reasonable trier of fact, crediting the plaintiff's version of events, could conclude that Beauparlant was present during the described uses of excessive force, observed some if not all of them, and had a realistic opportunity to prevent at least some of them.

I conclude otherwise as to Johnson. The only cognizable evidence as to his role is that he observed Jacques take the plaintiff to the ground but that it happened quickly and he was not close enough to intervene had he seen any inappropriate use of force. *See* Defendants' SMF ¶ 20; Johnson Aff. ¶ 5.

For these reasons, Johnson is entitled to summary judgment on the plaintiff's claims of failure to prevent the use of excessive force, but Provost and Beauparlant are not. There is no

triable issue that Johnson, Provost, or Beauparlant personally used excessive force against the plaintiff and, to that extent, all three are entitled to summary judgment as to these claims.

### C.  Conspiracy Claims: All Defendants

All five defendants finally seek summary judgment as to the plaintiff's claims that they conspired to violate his civil rights (Count 1).  *See* Motion at 14-16.  The plaintiff effectively concedes their entitlement to summary judgment on this count, stating that he does not address it and leaves it to the court to determine whether, based on the record presented by the defendants, there are material issues of fact.  *See* Response at 1 n.1.  This, in itself, is a proper basis on which to enter summary judgment in the defendants' favor on these claims.  *See, e.g., Paquin*, 233 F. Supp.2d at 69; *Zannino*, 895 F.2d at 17.  In any event, as the defendants argue, *see* Motion at 14-16, there is no such triable issue.

To survive summary judgment as to his claim that the defendants conspired to deprive him of his civil rights in violation of 42 U.S.C. § 1985, the plaintiff must present direct or circumstantial evidence "of an agreement among defendants from which a reasonable jury could have inferred a conspiracy among them to inflict harm upon the plaintiff[]."  *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008).  The plaintiff presents no such evidence.  Instead, the cognizable evidence shows that five Lewiston police officers responded to the scene of a reported assault of a tow truck driver, whereupon a series of fast-moving events unfolded.

All five defendants are entitled to summary judgment on the conspiracy claim.

### IV. Conclusion

For the foregoing reasons, the Motion is ***GRANTED*** as to all defendants with respect to the plaintiff's false arrest and conspiracy claims, ***GRANTED*** as to Johnson with respect to the plaintiff's excessive force claims, ***GRANTED*** in part as to Provost and Beauparlant with respect to the plaintiff's excessive force claims, to the extent predicated on the theory that Provost and/or

Beauparlant personally used excessive force against the plaintiff, and otherwise **_DENIED_**.
Remaining for trial are the plaintiff's excessive force claims against Jacques, Bourgoin, Provost,
and Beauparlant, with the limitation that the claims against Provost and Beauparlant may proceed
solely on a bystander liability theory.

Dated this 29th day of April, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge